**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

  *Plaintiff*

v.                                  CRIM. NO. 10-344 (PG)

YAMIL M. NAVEDO RAMÍREZ,

  *Defendant.*

**OPINION AND ORDER**

Currently before the Court are several motions in limine filed by the Government seeking to preclude defendant Yamil M. Navedo Ramírez ("Navedo") from presenting expert testimony regarding battered person syndrome as part of her defense of duress. Dockets No. 275, 338 and 352. Navedo has opposed said request. Dockets No. 313 and 386. For the reasons that follow, the Court finds that the Government's request must be **GRANTED IN PART AND DENIED IN PART.**

**I. BACKGROUND**

Navedo was a nineteen-year veteran of the Puerto Rico Police Department ("PRPD"). On October 6, 2010 she was arrested by federal authorities as part of "Operation Guard Shack," a large-scale FBI investigation targeting corrupt police officers in Puerto Rico. Resulting from this investigation, approximately 130 individuals—including more than 90 law enforcement officers—were arrested and charged because of their connection to approximately 125 illegal drug transactions. See Docket No. 338.

On October 28, 2010 a Grand Jury issued a Superseding Indictment charging Navedo on three counts, namely: (Count One) conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1); (Count Two) attempt to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1); and (Count 4) possession of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The Indictment averred that Navedo, along with co-defendant Wendell Rivera

Ruperto ("Rivera"), conspired to commit the aforementioned offenses by providing armed protection during an undercover drug transaction involving twelve kilograms of sham cocaine, in exchange for which each received a payment of $2,000. This alleged transaction took place on April 14, 2010.

With trial looming ahead, Navedo seeks to introduce evidence showing that she was the victim of physical abuse by co-defendant Rivera, which she alleges created an environment of duress that forced her to participate in the drug transactions chronicled in the Indictment. To bolster her defense, she wishes to introduce evidence regarding battered person syndrome, via the expert testimony of Dr. Carol Romey, who will purportedly testify that Navedo suffered from said syndrome. Docket No. 255. The Government opposes said request, arguing that the standard for duress in our circuit is an objective one, and that allowing Dr. Romey to testify would improperly imbue subjective considerations into the duress defense. It argues that said testimony must be precluded under Federal Rules of Evidence 401 and 402.

### III. DISCUSSION

In order to establish a claim of duress, a defendant must show that: (1) she acted under an immediate threat of serious bodily injury; (2) she had a well-grounded belief that the threat would be carried out; and (3) she had no reasonable opportunity to escape or otherwise frustrate the threat. United States v. Bravo, 489 F.3d 1, 10 (1st Cir. 2007)(citing United States v. Arthurs, 73 F.3d 444, 448 (1st Cir. 1996)). In assessing whether a defendant has met this standard, courts "do not examine the defendant's subjective perceptions about whether the threat was likely to be acted upon or whether escape was possible." United States v. Castro-Gómez, 360 F.3d 216, 219 (1st Cir. 2004). Rather, a court "hypothesizes a defendant of ordinary firmness and judgment and asks what such a defendant was likely to have experienced or how such a defendant was likely to have acted." Id.

The Fifth Circuit in United States v. Willis, 38 F.3d 170 (5th Cir. 1994), was faced with an issue similar to the one now before us. There, a defendant was charged and convicted of carrying a firearm during and in relation to a drug trafficking crime. At trial, defendant raised the

defense of duress, and sought to introduce expert testimony aimed at establishing that her history of abuse caused her to suffer from battered person syndrome, which in turn forced her to commit the alleged crimes under duress. The Government objected to said testimony, and the district court agreed to preclude any testimony concerning battered person syndrome. The Fifth Circuit affirmed, and held that evidence of battered person syndrome was not germane to a defense of duress, as it centered upon defendant's subjective state of mind, and not on what a person of ordinary firmness would do. Id. at 176. The court explained that evidence of battered person syndrome is "usually consulted to explain why this particular defendant succumbed when a reasonable person without a background of being battered might not have." Id. at 175. The court did mention that in determining whether the elements of duress are met, a jury may take into consideration the objective situation in which the defendant was allegedly subject to duress. Id. at 177, n. 8. The Court noted that this would presumably include evidence concerning the defendant's past history with the person making the unlawful threat. In the end however, the court established a bright line rule indicating that evidence of battered person syndrome is per se excludable when a defense of duress is raised.

In United States v. Marenghi, 893 F.Supp. 85 (D.Me. 1995), the District Court of Maine struck a different chord. There, a defendant was charged with conspiring to possess and distribute a controlled substance containing cocaine base. Once again, defendant sought to introduce expert testimony at trial to establish that she was a victim of battered person syndrome, which either prohibited her from forming the requisite capacity to commit the offenses, or forced her to commit the same under duress.[1] As in Willis, the Government argued that such expert testimony would merely demonstrate defendant's special vulnerability to coercion, rendering it irrelevant to the issue of whether defendant "acted as a reasonable person in complying with the purported coercion." Id. at 92.

The District Court of Maine, however, declined to adopt Willis's

---

[1] In our case, Navedo has not alleged that her battered person syndrome proscribed her from forming the requisite mental intent, *mens rea*, to commit the charged crimes, but rather alleges that despite her intent to commit the same, the syndrome created a situation of duress which in turn legally justified her crimes.

per se exclusion rule and instead ventured down a different path, reasoning that:

> Part of the complexity of the issue is that the distinction between subjective and objective evidence is not as clear as the Government asserts here. This can be demonstrated by changing the "snapshot" of circumstances that is shown to a jury in any particular case. If the jury sees the defendant's circumstances immediately prior to commission of the crime and there is no gun held to her head or other markedly extreme duress, the jury may conclude that any fear of imminent death or violence was unreasonable. However, if the defendant is permitted to pull the camera back to provide the broader picture, so to speak, of her circumstances, the jury could learn of a pattern of violence, control, and coercion leading up to the criminal act. Expert testimony could be helpful to explain to the jury how a reasonable person reacts to repeated beatings and emotional abuse. Providing the jury with information of specific incidents of abuse while providing no information about how such treatment can, over time, establish a dynamic where the threat of abuse hovers over every interaction between the individuals, even if such threat is not always articulated, would give the jury only half of the story. In effect, this expert testimony may be characterized as explaining how a reasonable person can nonetheless be trapped and controlled by another at all times even if there is no overt threat of violence at any given moment.

Id. at 94-95 (footnotes omitted). The court concluded that excluding the history and effect of the abuse suffered by a defendant with battered person syndrome would be "wholly unfair and unjustified." Id. at 95. It then clarified that "[t]he presentation of expert testimony need not state that *this particular defendant* suffered from the syndrome.... [r]ather the expert may simply explain the long-term effects of being battered in general." Id.

This Court finds the reasoning behind Marenghi to be especially persuasive here. Navedo maintains that the testimony of Dr. Romey is fundamental to explain why women who "have been subjected to domestic violence, battering and abuse do not act in a typical manner as compared with women who [have] not suffer[ed] from it." Docket No. 386, at 6. She also argues that said testimony will provide the jury with information on specific incidents of abuse, assist it in understanding how a reasonable person reacts to repeated beatings and emotional abuse, describe "a

dynamic where the threat of abuse hovers over every interaction between the individuals," and explain why a person suffering from said abuse would not inform police or friends. Id. The Court believes that most of this testimony would be admissible as part of Navedo's defense of duress, as long as it is couched in general, objective terms and confines itself within the bounds set by the court in Marenghi.

The Court does agree with the government, however, that the proposed testimony may not enter into Navedo's subjective set of mind, meaning that Dr. Romey may not testify as to whether Navedo, or a person sharing her exact life experiences, fits the profile of someone who suffers from battered person syndrome. Neither may Dr. Romey testify as to whether an ordinary person faced with the same set of circumstances as Navedo during the purported drug transactions would have reasonably feared suffering immediate bodily injury or death. Lastly, the Court also cautions Navedo to avoid offering expert testimony that merely provides conclusory assessments designed to link her subjective state of mind to the elements of duress. See United States v. Dixon, 413 F.3d 520 (5th Cir. 2005).[2] Such a strategy would also unduly intrude into the function of the jury and vitiate the objective framework of the duress defense.

Thus, in order for this Court to properly rule on the admissibility of this evidence, and whether the same will comport with the above guidelines, the Court hereby orders defendant Navedo to submit a proffer of evidence of the anticipated content of Dr. Romey's testimony by **March 12, 2012**. Once such a proffer has been made, the Government will also be afforded an opportunity to express any objections it may have, in conformance with this opinion and order.

---

[2] In Dixon, the Fifth Circuit found that the defendant's psychiatric expert inappropriately used a "transparent strategy" of "inserting brief, perfunctory objective characterizations into testimony that otherwise focuse[d] exclusively on the defendant's subjective perceptions." Id. at 524, n. 2 (quotations omitted). The court did note that other courts had recognized a distinction between subjective testimony, like the one just described, and generalized objective testimony, "which describes the typical patterns, circumstances and effects of battery within an abusive relationship without attempting to draw any conclusions therefrom as to the subjective perceptions of a particular defendant." Id. The Court believes the second type of testimony should be admissible in the instant case.

### III. CONCLUSION

For the reasons above stated, the Government's motions in limine are **GRANTED IN PART AND DENIED IN PART**. Defendant Navedo is **ORDERED** to submit a proffer of evidence as to Dr. Romey's testimony by **March 12, 2012.**

**IT IS SO ORDERED**

In San Juan, Puerto Rico, March 6th, 2012.

*s/ Juan M. Pérez-Giménez*
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**